IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS K. ZIEGLER,

                Plaintiff,                Case No. 3:04 CV 7302

   -vs-                                 MEMORANDUM OPINION

FINDLAY INDUSTRIES, INC., et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendants' Motion for Partial Dismissal (Doc. No. 9), to which Plaintiff has filed a Response and Cross-Motion for Partial Summary Judgment (Doc. Nos. 14 & 15). Defendants have filed a Response to Plaintiff's cross-motion and a Reply regarding their own motion (Doc. No. 16). Plaintiff has filed a Reply in support of his cross-motion (Doc. No. 18). This Court has jurisdiction under 28 U.S.C. § 1332(a). For the reasons that follow, Defendants' motion is granted as to Counts One and Three and denied as to Count Six. Plaintiff's cross-motion is denied as moot.

## BACKGROUND

Defendant Findlay Industries, Inc. ("Findlay" or "Findlay Industries") agreed in a written contract to employ Plaintiff as its CEO for three years, provided, however, that Findlay could terminate Plaintiff's employment at any time, without cause, but that Plaintiff would then be entitled to one year's salary and benefits. Plaintiff worked as Findlay's CEO from October 15, 2002 to February 26, 2003, when Findlay terminated him without cause. During the next year, Findlay paid Plaintiff the agreed salary and benefits.

On May 20, 2004, Plaintiff sued Findlay and several associated entities and individuals. Plaintiff's allegations relevant to the motions now pending are: that Findlay fraudulently induced him to enter into the employment contract (Count One) by rushing him through due diligence and by failing to disclose that Findlay was in dire financial straits and hired Plaintiff merely as a figurehead, to be gotten rid of as soon as practicable; that Defendant Terrance L. Reinhart and other Defendants defamed him (Count Three); and that Defendants engaged in a conspiracy to injure him (Count Six).

### DISCUSSION

Defendants have moved to dismiss Plaintiff's Count One, a fraud claim, his Count Three, a defamation claim, and his Count Six civil conspiracy claim.

*A. Motion to Dismiss Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *Westlake*, 537 F.2d at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2004).

*B. Count One - Intentional Fraud*

2

Count One of the Complaint, captioned "Intentional Fraud," alleges that Defendants concealed material facts to prevent Plaintiff from recognizing the need for further investigation of Findlay Industries before becoming its CEO and from negotiating a severance benefit covering the full term of his employment, rather than just one year. Plaintiff claims he would have negotiated a severance benefit at least equal to three years' salary had he known the truth about Findlay Industries. The claim is one of fraudulent inducement; Plaintiff wishes to affirm the contract and sue for damages caused by the Defendants' alleged fraud. However, by performing under the contract after learning the facts underlying the fraud, Plaintiff has waived his fraud claim.

In Ohio, one who performs a contract after learning of fraud in its inducement ratifies the contract, and may not subsequently disaffirm it. *Balt. & Ohio R.R. Co. v. Jolly Bros. & Co.*, 72 N.E. 888, 894-95 (Ohio 1904). Moreover, "the performance of an executory contract after knowledge of facts making it voidable on the ground of fraud in its procurement, is a waiver of any right of action for damages for the fraud," unless to stop performance would be impracticable. *Id*. at 895.

In *Jolly Brothers*, the B. & O. Railroad hired the Jolly Brothers excavators to remove a large amount of earth. Jolly Brothers claimed B. & O. fraudulently described the material to be removed as easily excavated, dry sand. A few weeks after transporting its men and equipment to the site and beginning work, Jolly Brothers learned the majority of the material to be removed was mud and quicksand, much costlier to excavate. They threatened to quit the job, but continued to perform after a B. & O. employee promised to increase their compensation. The Railroad subsequently failed to honor that promise, and the excavators sought damages for fraudulent inducement. The Ohio Supreme Court explained:

3

> Here the facts were known within a week or two after the commencement of the work, and the plaintiffs could not go on with the work, accept payment at the prices stipulated in the contract, and then, when it proved a losing venture, quit and sue for damages on the ground that their loss was caused not by themselves in electing to go on with the work but by the false representations of the defendant.

*Id.*

In this case, as in *Jolly Brothers*, the Complaint alleges that Plaintiff learned of all of the facts underlying his fraud claim "within weeks" of commencing his employment as Findlay's CEO. (Doc. No. 1, ¶ 25). Yet, Plaintiff continued to perform under the contract, accepting payment for his work, plus a full year of severance pay. As in *Jolly Brothers*, he has thereby waived his right to rescind the contract and his right to affirm and assert a claim of fraud. Moreover, given the employment situation described in the Complaint, Plaintiff could not (and does not) claim that ceasing performance upon discovery of the fraud would have been impracticable. In the cases *Jolly Brothers* cited finding performance, once commenced, impracticable to suspend, the fraud was discovered in the midst of a cattle drive on the Chisholm Trail and a log drive down a river, respectively, when "to retract [was] as dangerous as to advance," *Sellar v. Clelland*, 2 Colo. 532, 549 (Colo. 1875) (cattle), and performance "could not be stopped," *Sell v. Mississippi River Logging Co.*, 60 N.W. 1065, 1066-67 (logs). No such danger or impossibility existed for Plaintiff in the present case. Plaintiff's Count One claim is dismissed.

Because Count One would be dismissed whether or not the portion of the contract allowing Findlay to terminate Plaintiff if it paid him one year's salary is a "release," and because Defendants admit that the provision is not a release, Plaintiff's motion for summary judgment on that issue is denied as moot.

*C. Count Three - Defamation*

Defendants claim Plaintiff's defamation and slander claims are barred by the statute of limitations. Because Plaintiff's sole allegations of defamation occurred more than one year before Plaintiff filed his complaint, the Court will grant Defendant's motion to dismiss Plaintiff's Count Three claims. However, because Plaintiff asserts in his Response that Defendant made defamatory statements within the limitations period, the Court will grant Plaintiff leave to amend his complaint (within the limits of and in conformity with Rule 8) to include any allegations that Defendants defamed him after May 20, 2003.

In Ohio, defamation claims must be brought within one year after the defamatory words are first spoken or published, regardless of when the plaintiff learns of them. Ohio Rev. Code § 2305.11(A); *Sabouri v. Ohio Dep't of Job & Family Servs.*, 763 N.E.2d 1238, 1240-41 (Ohio Ct. App. 2001).

Plaintiff filed his Complaint on May 20, 2004, and may therefore obtain relief only for defamatory statements made after May 20, 2003. The Complaint alleges only that Defendants made false oral and written statements about Plaintiff in January of 2003 and "while Plaintiff was employed as CEO of Findlay," which employment ended on February 26, 2003. (Doc. No. 1, ¶¶ 28, 45-46). The Complaint neither states nor implies, even on the most favorable reading, that any Defendant defamed Plaintiff after May 20, 2003. Count Three therefore fails to state a claim on which relief can be granted and it shall be dismissed.

Plaintiff alleges in his Response that: "there remains . . . a genuine issue of material fact whether Defendants committed defamation or slander after May 20, 2003"; that discovery is needed to make this determination; and that "an appropriate amendment can be made before discovery is commenced or after it has concluded." (Doc. No. 14, p. 9). The Court will not sanction a "fishing expedition." However, the Court will grant Plaintiff two weeks to amend his complaint to set forth, in accordance with Federal

5

Rule of Civil Procedure 8, allegations that Defendants made defamatory statements within the limitations period, based on facts of which Plaintiff is presently aware. *See Wright v. Sodexho Marriott Servs.*, 30 Fed. Appx. 566, 567 (6th Cir. 2002) (finding a complaint in a defamation action adequate where it satisfied the requirements of notice pleading and alleged all of the proper elements of a defamation claim, and referring to Rule 8(a)(2)); *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997) (allowing amendment to cure procedural deficiencies in a defamation complaint).

*D. Count Six - Civil Conspiracy*

A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. . . . An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (internal quotations omitted). Defendant, citing *Minarik v. Nagy*, 193 N.E.2d 280, 281 (Ohio 8th Dist. Ct. App. 1963) and *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 244 (Ohio 6th Dist. Ct. App. 1993), urges the Court to dismiss Plaintiff's civil conspiracy claim because Plaintiff has not alleged damages attributable to the conspiracy itself, above and beyond the damages resulting from the underlying tort. In response, Plaintiff cites to *Gosden v. Louis*, 687 N.E.2d 481, 497-98 (Ohio 9th Dist. Ct. App. 1996), in which the Ohio Court of Appeals held that *Minarik* does not require plaintiffs bringing claims for civil conspiracy to plead and prove damages other than those arising from the underlying tort, and that cases such as *Stiles*, which hold to the contrary in reliance on *Minarik*, misconstrue the holding in that case. The Ohio Supreme Court has not spoken on the issue.

This Court normally applies the law of Ohio "in accordance with the then controlling decision of the highest state court." *United States v. Anderson County, Tenn.*, 761 F.2d 1169, 1173 (6th Cir.

1985); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct 817, 822, 82 L. Ed. 1188 (1938). Where the Ohio Supreme Court has not ruled, this Court must attempt to ascertain from all the available data, including relevant dicta in related cases, Ohio Supreme Court rulings in analogous cases, and the rulings of Ohio appellate courts, how the Ohio Supreme Court would decide the issue. *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989).

> In *Minarik*, the Ohio Eighth District Court of Appeals, quoting Cooley on Torts, stated that:
>
> "The general rule is, that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. The *damage* is the gist of the action, not the conspiracy; and though the conspiracy may be said to be of itself a thing amiss, it must nevertheless, until something has been accomplished in pursuance of it, be looked upon as a mere unfulfilled intention of several to do mischief.
>
> " . . . When the mischief is accomplished, the conspiracy becomes important, as it affects the means and measure of redress; for the party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it. The significance of the conspiracy consists, therefore, in this: That it gives the person injured a remedy against parties not otherwise connected with the wrong. It is also significant as constituting matter of aggravation, and as such tending to increase the plaintiff's recovery."

*Minarik*, 193 N.E.2d at 281 (quoting 1 Cooley on Torts § 74, at 234-36 (4th ed. 1932)) (emphasis in *Minarik*). The court then reiterated:

> "Conspiracy, in and of itself, furnishes no cause of civil action. *The gist of the civil action for conspiracy is the damage caused by acts committed pursuant to a formed conspiracy*, rather than the conspiracy itself; and unless something is actually

7

> done by one or more of the conspirators *which proximately results in damage*, no civil action lies against anyone."

*Id*. (quoting 10 Ohio Jur. 2d *Conspiracy* § 3 (1954)) (emphasis in *Minarik*). The *Mikarik* court proceeded to inquire whether the plaintiff had suffered any "actual damage directly attributable to the conspiracy." *Id*.

Some Ohio courts have taken *Minarik* to stand for the proposition that "there must be actual damages attributable to the conspiracy in addition to those damages caused by the underlying tort in order for the plaintiff to recover from the conspiracy." *Stiles*, 624 N.E.2d at 244 (citing to *Minarik*); see also *Crosby v. Beam*, 615 N.E.2d 294, 304 (Ohio 6th Dist. Ct. App. 1992) (same). However, the Ohio Ninth District Court of Appeals, in *Gosden*, found that such holdings were based on a misreading of *Minarik*. *Gosden*, 687 N.E.2d at 497. *Gosden* explained that the court's statement in *Minarik* that damages must be "directly attributable" to the conspiracy:

> [D]id not mean the damages had to be attributable only to the conspiracy to the exclusion of the underlying tort. It meant that damages, in order to be recoverable under a civil conspiracy claim, cannot be the result of just any tort committed by a conspirator, or just any act committed in furtherance of the conspiracy. They must have been caused by a tort committed in furtherance of the conspiracy. Essentially, this simply restricts the measure of recovery for a conspiracy claim to those damages caused by the underlying tort (or torts) necessary to support the claim for civil conspiracy in the first place.

*Id*. Referencing the passage from Cooley on Torts quoted by *Minarek* and set out above, the Court concluded that "[a] civil conspiracy claim . . . serves only to enlarge the pool of potential defendants from whom a plaintiff may recover damages and, possibly, an increase in the amount of those damages; it does not increase the plaintiff's burden by requiring proof of additional damages." *Id*.

8

While the Ohio Supreme Court has never explicitly so held, this Court's determination is that the Ohio Supreme Court would adopt the holding of *Gosden* if the question was before it, for the reasons stated in that opinion.[1] As *Gosden* explained, a full and fair reading reveals that *Minarik* did not hold that a plaintiff must plead and prove damages arising out of the agreement itself, but merely that civil conspiracy plaintiffs may not recover damages arising from torts not involved in the agreement. Moreover, the Ohio Supreme Court cited to both *Minarik* and *Gosden* in support of other propositions of law in *Williams v. Aetna Finance Co.*, 700 N.E.2d 859, 868 (Ohio 1998), and referred those seeking "a thorough analysis of the elements of civil conspiracy and an explanation of how the tort subtly differs from the related aiding and abetting theory of liability" to *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), in which the United States Court of Appeals for the District of Columbia Circuit explained that to prove a civil conspiracy, a plaintiff must show there was an agreement and that "an unlawful overt act produced an injury and damages," but did not mention any requirement that the plaintiff plead and prove damages above and beyond those caused by the underlying tort. *Williams*, 700 N.E.2d at 868; *Halberstam*, 705 F.2d at 477.

Therefore, this Court finds that, to succeed on a claim of civil conspiracy under Ohio law, a plaintiff need not plead or prove damages above and beyond those resulting from the tort or torts that are

---

[1] While it is not relevant to the Court's decision today, the Court notes that the United States District Court for the Southern District of Ohio and the United States Bankruptcy Court for the Northern District of Ohio have taken *Gosden* to represent the law of Ohio regarding the "resulting in actual damages" element of a civil conspiracy claim. *De Boer Structures (U.S.A.) Inc. v. Shaffer Tent & Awning Co.*, 233 F. Supp. 2d 934, 945 (S.D. Ohio 2002); *Youngstown Osteopathic Hosp. Ass'n v. Pathways Ctr. for Geriatric Psychiatry, Inc. (In re Youngstown Osteopathic Hosp. Ass'n)*, 280 B.R. 400, 413 (Bankr. N.D. Ohio 2002).

the object of the conspiracy. Accordingly, Defendants' motion to dismiss Count Six is denied. However, the Court notes that, in light of its dismissal of Count One, Plaintiff's Count Six conspiracy claims survive only to the extent they are premised on torts other than the fraud plead in Count One.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Partial Dismissal (Doc. No. 9) is granted as to Counts One and Three and denied as to Count Six. Plaintiff is granted two (2) weeks to amend his complaint as to Count Three. Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. No. 15) is denied as moot.

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    SENIOR U. S. DISTRICT JUDGE